**H. Rap BROWN, Appellant,**

v.

**Honorable Raymond FOGEL, City Sergeant, Alexandria, Virginia, Appellee.**

**No. 11802.**

United States Court of Appeals Fourth Circuit.

Argued Oct. 5, 1967.

Decided Nov. 28, 1967.

William M. Kunstler, New York City, for appellant.

Reno S. Harp, III, Asst. Atty. Gen. of Virginia, for appellee.

Before HAYNSWORTH, Chief Judge, and BRYAN and WINTER, Circuit Judges.

HAYNSWORTH, Chief Judge:

H. Rap Brown seeks relief in this court from a condition imposed upon him by the District Court in ordering his release, on his own recognizance, from the custody of Virginia officials detaining him under an extradition warrant.

The District Court's order requires Brown to remain in the general custody of his attorney in the Southern District of New York except for travel for appearances in courts in which criminal charges are pending against him and for necessary preparation for defending such charges. Brown sought unsuccessfully in the District Court, and he now seeks in this Court, a modification of the order to permit him to travel extensively to meet certain speaking engagements throughout the United States and one in England.

We decline the requested relief.

Charged in Maryland with counseling or procuring the burning of a school building, Brown was arrested in Virginia on a governor's extradition warrant. He promptly sought habeas corpus relief in the Corporation Court for the City of Alexandria and release on bail pending the termination of those proceedings. Bail was denied upon the ground that the court lacked jurisdiction to grant bail to one held under a governor's extradition warrant. An application for bail to an individual Justice of Virginia's Supreme Court of Appeals was denied on a similar jurisdictional ground. Brown then filed in the District Court a petition for a writ of habeas corpus for the sole purpose of procuring his release on bail.

At the hearing, it was represented that no corporate surety could be found which would execute another bond for Brown and that cash resources available to him had been substantially exhausted in posting a cash bond in the United States District Court for the Eastern District of Louisiana and the Southern District of New York in which he faced charges of a federal offense. The District Judge then indicated a willingness to release Brown on his own recognizance to the general custody of his attorney, William M. Kunstler, Esquire, of New York. The suggestion was readily accepted. The court then ordered his release, on his own recognizance, into Mr. Kunstler's custody conditioned upon his remaining in the area of the United States District Court for the Southern District of New York except for court appearances or for travel in preparing his defense of criminal charges pending against him.

There was no appeal from that order. Later, however, Brown applied for relief from the travel restriction. He sought permission to travel in response to invitations to speak at universities and colleges and in cities throughout the length and breadth of the United States and in Oxford, England. His application was denied, and he appealed.

We do not pause to consider the appealability of the order, for it has not been contested, and the application deserves a prompt resolution on the merits.

Virginia's Attorney General has questioned the jurisdiction of the District Court to release Brown on bail and the propriety of an exercise of any such jurisdiction in the light of a claimed failure to exhaust state remedies.

We notice the jurisdictional question, of course, but we are not persuaded that the District Court lacked jurisdiction to entertain a petition for a writ of habeas corpus to obtain release on bail pending litigation of the validity of an extradition warrant.[1]

Virginia's most insistent objection is a claimed failure of exhaustion of state remedies. This is premised upon Brown's failure to appeal to the full Supreme Court of Appeals of Virginia and a contention that the application to an individual Justice under § 19.1–112 of the Code of Virginia, 1950, a part of the general criminal procedure code, was not

---

1. Tickle v. Summers, 4 Cir., 270 F.2d 848; see also, Wansley v. Wilkerson, W.D.Va., 263 F.Supp. 54, holding federal habeas relief available to a state prisoner contesting his denial of bail in the state court. Since allowance of bail is usually discretionary, however, the question in the federal court will rarely be a substantial one unless the discretionary judgment has not been exercised in the state courts.

the equivalent of, nor an adequate substitute for, an appeal asserting a right to bail under § 19.1–66, a part of the extradition act. Some force is lent the contention by reason of the fact that the individual Justice denied the application upon the ground that Brown was not held for a trial for a criminal offense, and thus, inferentially, not one entitled to proceed under § 19.1–112.

The question whether state remedies were exhausted may be a nice one, but we do not think we are compelled to reach it. The exhaustion of remedies doctrine is not jurisdictional.[2] It is a rule of comity, which, in our federal system, should be faithfully applied in the absence of unusual circumstances.[3] These we find present here in the fact that Virginia acquiesced in the District Court's original release order. No appeal was taken; there was no effort to obtain a stay of it. Virginia chose to contest the matter no further, and elected to release Brown. After Virginia's acceptance of the order and its complete execution by Brown's release, the belated exhaustion of remedies objection to the entry of any order does not command our attention. When Virginia complied with the order and took no appeal, it waived all objections except those strictly jurisdictional.

On the merits of the appeal, we think it was well within the discretion of the District Judge to impose the conditional limitation upon Brown's travel in the first instance and to refuse to modify it on the later application.

It is well settled that a release on bail may be subject to reasonable conditions and limitations. There is precedent for a condition that the bailee remain within the territorial jurisdiction of the court,[4] and, for many years, he was held subject to the absolute power of direction and control by his bondsman.[5] The latter requirement faded as bonding became a business,[6] but resort to its underlying principle is not inappropriate when the proffered supervision of an attorney is accepted as the substitute for a bond.

Brown is the chairman of the Student Non-Violent Coordinating Committee, with offices in New York and Atlanta. When his New York lawyer represented that Brown could obtain no bond, the District Judge, quite appropriately, turned to a consideration of what reasonable substitutes might be available to assure his appearance in lieu of the usual financial incentive a bond provides. He found enough in the lawyer's expression of willingness to assume the responsibilities of custodian.

In releasing Brown, without a bond, to the custody of his lawyer and imposing the condition that Brown remain in New York, except for travel necessary to his defense of criminal prosecutions, the judge displayed great consideration for Brown and his duties as the chairman of the organization he heads. He was not restricted to Virginia, where he has no office, but allowed to go to New York where he has one of his two principal offices. The travel limitation was imposed with an appropriate exception which would not impede Brown's defense of any criminal charge, but with regard for the assurance inherent in the law-

---

2. Fay v. Noia, 372 U.S. 391, 430–431, 83 S.Ct. 822, 9 L.Ed.2d 837; Bowen v. Johnston, 306 U.S. 19, 27, 59 S.Ct. 442, 83 L.Ed. 455.

3. 28 U.S.C.A. § 2254; Frisbie v. Collins, 342 U.S. 519, 521, 72 S.Ct. 509, 96 L.Ed. 541; Darr v. Burford, 339 U.S. 200, 204, 210, 70 S.Ct. 587, 94 L.Ed. 761; Hunt v. Warden, 4 Cir., 335 F.2d 936.

4. Reynolds v. United States, 80 S.Ct. 30, 4 L.Ed.2d 46; Estes v. United States, 5 Cir., 353 F.2d 283; United States v.

Foster, 2 Cir., 278 F.2d 567, 570; United States v. Mitchell, 246 F.Supp. 874 (D. Conn.1965); United States v. D'Argento, 227 F.Supp. 596 (N.D.Ill.1964), rev'd on other grounds, 7 Cir., 339 F.2d 925.

5. See Taylor v. Taintor, 83 U.S. (16 Wall.) 366, 371–372, 21 L.Ed. 287; Reese v. United States, 76 U.S. (9 Wall.) 13, 19 L.Ed. 541.

6. See Stack v. Boyle, 342 U.S. 1, 5, 72 S.Ct. 1, 96 L.Ed. 3.

yer's assumption of custodial responsibilities.

Neither we nor the District Judge have any notion that Mr. Kunstler is responsible for a minute supervision of Brown, and his custodial responsibilities do not prevent his leaving the Southern District of New York in the practice of his profession. When Mr. Kunstler is away, however, his office is there in New York to relay messages from or about Brown. If Brown is free to travel wherever he would, even outside the United States, the force of the lawyer's influence is left largely to Brown's whims, and the minimal assurance, in lieu of a bond, of appearance which the District Judge sought, would be largely undermined.

■■ Consideration may also be given to the apparent substantiality or insubstantiality of Brown's attack upon extradition. We express no considered opinion upon it, but his original petition presented no claim of patent or impressive merit. He alleged that his arrest was illegal for several reasons [7] and, for wholly unspecified reasons, that he feared bodily harm and deprivation of constitutional rights should he be delivered to Maryland authorities.[8] In his original petition Brown raised no question about the sufficiency of the Maryland warrant, his presence in the state at the time of the alleged commission of the crime or his identity as the person being sought.[9]

■ We find no First Amendment question present. Brown's physical limitation to New York deprives him of the privilege of accepting invitations to speak elsewhere, but there is no limitation upon his right to speak in New York or to communicate, by any means other than personal travel, with people in other states. Since, as we have found, the travel limitation is a reasonable one in the context of his release on his own recognizance to the custody of his New York lawyer, the incidental limitation upon his activities as a public speaker is a collateral consequence of which he cannot complain.

Affirmed.

ALBERT V. BRYAN, Circuit Judge (dissenting):

I think the Federal court's grant of bail to H. Rap Brown was improvident and should be vacated. As far as I know, a person charged with a State felony has no absolute and unconditional Constitutional or statutory right to bail; its allowance is dependent upon many factors.[1] But whatever the right, it is a judgment to be made initially by the State courts. At any rate, the prisoner should not have been permitted at will to skip the procedure laid out by the Virginia law to enable her courts to weigh the advisability of bail.

To begin with, the simple issue of whether he should be delivered to Maryland has thus been allowed to balloon into enormous proportions. The majority opinion quite fully and accurately reveals the utter baselessness of Brown's resistance to extradition. The hollowness of

---

7. Ordinarily, illegality in the arrest confers no immunity from prosecution. Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541.

8. The governor of the asylum state is, ordinarily, entitled to assume that the fugitive's constitutional rights will be protected in the demanding state. Marbles v. Creecy, 215 U.S. 63, 30 S.Ct. 32, 54 L.Ed. 92; and see Sweeney v. Woodall, 344 U.S. 86, 73 S.Ct. 139, 97 L.Ed. 114. If constitutional questions should arise during the course of a trial in Maryland, they are fully subject to review in the courts of that state and on federal habeas corpus.

9. See Johnson v. Matthews, 86 U.S.App. D.C. 376, 182 F.2d 677.

1. The Federal Constitution prohibits only "excessive bail." Although a persuasive argument can be made that this prohibition grants the right to bail on reasonable terms, see Foote, The Coming Constitutional Crisis in Bail, II, 113 Univ. of Pa.L.Rev. 1125 (1965), it cannot be denied that bail may be refused a person who may be unlikely to appear for trial. See Moore, Federal Practice Para. 46–05.

The pertinent Federal statutes provide only for bail in prosecutions for Federal crimes, 18 USC §§ 3141–3152.

it all and the waste of time are laid bare when it is remembered that Brown could be harmed but little if he were denied bail entirely before he is sent back to Maryland. There he could procure bail from the court in which he would be tried—the logical place for it.

Positing a point of appellate procedure, too refined I think, the majority today overlooks the public interest as it refuses to correct an unjustified interference with orderly State criminal processes. The District Court intervened between the State courts and Brown prematurely and without need or necessity. We should not hesitate to erase the error.

On his representation that he had fully followed the State law to obtain bail but failed, Brown was at once released from the custody of the State. Truth is —and it cannot be questioned—Brown had *not* invoked the remedies open to him under the Virginia statutes.

Disapproval of the District Court's entertainment of Brown's case, and demand that Brown be required to pursue fully his State conferred bail privileges before going into the Federal court, are not simply matters of etiquette. It is immaterial that the Federal courts may have jurisdiction to admit to bail without a previous request of the State court. Power is one thing and the use of it another. Doctrine embedded in our Federal system altogether soundly admonishes caution and restraint by Federal courts not to jeopardize State prosecutions. I think this canon was not observed here.

After a strictly Constitutional hearing, the Governor of Virginia issued his warrant directing Brown's surrender to Maryland. Meanwhile, having unsuccessfully asked bail of the Virginia trial judge, Brown forewent his right under Va.Code Ann. §§ 8–596, 8–606, to seek bail by appeal to the Supreme Court of Appeals of Virginia. He petitioned only one member of that Court, who possessed no jurisdiction as a single justice.[2]

Generous provision is made by Virginia for the appeal. The gravity of the State's concern is manifested by an extraordinary statutory provision. Va. Code Ann. § 8–606 declares that if the appellate court is not in session it may be convened to consider a request for habeas corpus, which would include an application for bail, on the call not only of the Chief Justice but of the Governor too. Brown's ploy avoided final expression by the Virginia courts on the advisability, conditions, amount and security of bail, considerations of public interest. Until this determination of them had been made, the Federal court had no right to hear Brown's plaint.

The immediate hurt to the public interest is the possibility of serious delay by reason of the frailty of the bail's assurance of Brown's return to Virginia and Maryland. Delay is a potent force—witnesses disappear, memories dim—to forestall prosecution of crime.

The only tether upon Brown is his attorney's promise to produce him when called upon. Momentarily, on whim or caprice, Brown may discharge this attorney and thus sever even this slight rein upon him. No comfort is found in the assertion that such absentia would justify revocation of the bail. Of course it would, but notably that means delay.

Even if the bail is forfeited and revoked there is the problem of recapture, at the least one of delay. Since custody as well as control have been entirely taken from Virginia and Maryland, it is questionable whether either could then seek his apprehension. Assuming that Maryland might, another round of extradition proceedings would begin. As to measures in the District Court, it appears at once that the bail statutes of the United States, 18 U.S.C. 3141–3152, to repeat, are not applicable, for this is

---

2. Brown chose to proceed under Va.Code Ann. § 19–1–112, which applies only to cases where bail is refused in criminal cases. The extradition statute, applicable here, has its own provision for bail, § 19.1–66. Denial of bail under this provision can be challenged only through habeas corpus. See Va.Code Ann. §§ 19.1–59, 8–606.

a civil proceeding. Perhaps a contempt citation with capias might be efficacious after an order to appear. But even then proceedings for his removal from the place of arrest to the Eastern District of Virginia could ensue. Cf. F.R.Crim.P. 40(b). All of these contingencies spell delay.

Discussion of these possibilities is solely to demonstrate that Brown now has further routes for the delay, and maybe defeat, of Maryland's prosecution. It is suggested that the same uncertainties would exist even if the State had bailed Brown. However, that is the responsibility and concern of the State court. Certainly it does not excuse the intervention of the Federal court.

Now we are content to rely on a point of procedure to withhold remedy of the recounted disregard of the public interest. The refusal to direct vacation of the bail order is grounded exclusively on the State's failure to appeal the District Court's ruling. Incidentally, the Court forgives Brown for not appealing his application for bail, yet now penalizes the State for not appealing the grant of bail. The State is said to have thereby waived its right to object now to the bail. But the same argument would preclude Brown's motion to change the bail conditions. If they were onerous, under the majority's view he waived this objection by not appealing when they were imposed.

In my judgment neither of these conclusions is sound. The opportunity to review the entire bail order is still at hand, both for Brown and for the State. It is an interlocutory order—for the bail case is still open—and because of its very character necessarily remains fluid until the bail is satisfied or otherwise terminated. Either party may seek its complete alteration, or the State its dissolution, at any time. Actually, Brown's move was in the nature of a motion to reconsider. I believe it was appropriate procedure, but I think the State has the same right. Brown reopened the case by asking for a modification of the bail conditions. Now the State asks recall of Brown's enlargement on bail. Even if there was a waiver of this demand by the State at the first hearing, it was not irrevocable. Nor was Brown's waiver.

I cannot agree that he may restrict us to a consideration of only such part of the bail order as he chooses to tender. The conditions of a bail bond or recognizance are integral parts of it; a motion upon them brings up the entire obligation for review. He cannot slice the bail issue so finely and, in this nicety, preclude our reconsideration of his release. If we have the power to cancel certain conditions of the bail, as Brown now contends and the Court holds, we have the right to reconsider it in toto.

I would direct rescission of the order and also direct revocation of the bail.