UNITED STATES of America,
Plaintiff-Appellee,

v.

Michael Lynn CLARK, Defendant-
Appellant.

No. 26641

Summary Calendar.

United States Court of Appeals
Fifth Circuit.

May 23, 1969.

Clarence R. Scales, Jackson, Miss., for defendant-appellant.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., E. Donald Strange, Asst. U. S. Atty., Joseph E. Brown, Jr., Asst. U. S. Atty., Jackson, Miss., for plaintiff- appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

█ Pursuant to new Rule 18 of the Rules of this court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the clerk to place the case on the Summary Calendar and to notify the parties in writing. See, Murphy v. Houma Well Service, 5 Cir. 1969, 409 F.2d 804, Part I.

Appellant, Michael Lynn Clark, appeals to this court from a conviction for bail jumping under 18 U.S.C.A. § 3150 (Supp., 1969).[1] We reverse because we find that the conduct for which Clark was convicted was not an indictable offense under § 3150.

The circumstances leading up to Clark's conviction are as follows. On May 24, 1967, appellant pleaded guilty in a United States district court to the offense of interstate transportation of a stolen motor vehicle. 18 U.S.C.A. § 2312. The court adjudged appellant guilty and deferred sentence to await receipt of a presentence report, but no fixed date was set for sentencing. The United States Attorney then notified the court that the appellant was being held in jail in lieu of $750.00 bond and the court decided to continue the bond at that figure. It agreed, however, to release appellant on his own recognizance. Appellant signed the appearance bond which conditioned his release on not departing from Hinds or Rankin County, Mississippi, and the judge advised him of the penalties he might incur for violating the conditions of his bond, 18 U.S.C.A. § 3146(c). Thereafter the court apparently directed appellant to report to Charles Raggio, the probation officer, for completion of the presentence report. The record does not reflect whether this directive was made a condition of release or whether it was included in the written appearance bond that appellant signed.[2] The record is also unclear as

---

1. 18 U.S.C.A. § 3150. Penalties for failure to appear

Whoever, having been released pursuant to this chapter, willfully fails to appear before any court or judicial officer as required, shall, subject to the provisions of the Federal Rules of Criminal Procedure, incur a forfeiture of any security which was given or pledged for his release, and, in addition, shall (1) if he was released in connection with a charge of felony, or while awaiting sentence or pending appeal or certiorari after conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both, or (2) if he was released in connection with a charge of misdemeanor, be fined not more than the maximum provided for such misdemeanor or imprisoned for not more than one year, or both, or (3) if he was released for appearance as a material witness, shall

be fined not more than $1,000 or imprisoned for not more than one year, or both.

2. The government indicates in its brief that Clark was released pursuant to 18 U.S.C.A. § 3146(a), but the record does not show which provisions of § 3146(a) (1)– (5) were invoked and made express conditions of Clark's release. The fact that Clark's appearance bond restricted his travel within named counties in Mississippi would indicate that the court invoked § 3146(a) (2). But there is no indication which part of the statute was invoked to condition Clark's release on his reporting to the probation officer. There are statements in the legislative history of the Act which suggest that the invocation of § 3146(a) (1) would not have been proper for this purpose. See 1966 U.S. Code Cong. and Adm.News, p. 2293. The only other possibility would be § 3146(a) (5), but it is difficult to understand how

to the terms upon which Clark was to report to the probation officer, whether for one day only, or until the presentence report was complete, or on such terms as the probation officer might thereafter impose.

Appellant did report to Mr. Raggio as directed. Approximately 45 minutes later, however, he requested permission to go to the home of his grandparents. The probation officer granted his request upon condition that Clark return to the probation office the following morning at 8:00 a. m., to help him complete the presentence report. Appellant failed to appear in Mr. Raggio's office as promised and later that same day a warrant was issued for his arrest. He was taken into custody on June 7, 1967 and sentence was imposed for transportation of a stolen motor vehicle on July 24, 1967. At that time appellant was 19 years old and a first offender. He received a maximum sentence of five years imprisonment.

In March of 1968, while appellant was serving his sentence in the federal penitentiary at Lewisburg, Pennsylvania, a federal grand jury indicted appellant for bail jumping. The indictment charged

a violation of 18 U.S.C.A. § 3150, the enforcement provision of the Bail Reform Act, and alleged a willful failure to appear before a United States probation officer as required by a condition of his bail bond. Appellant was brought to trial on August 12, 1968, and a jury found him guilty as charged. The judge sentenced him to another maximum sentence of five years, such sentence to run consecutively with the five year sentence he was already serving.

On this appeal appellant alleges two grounds for reversal. He claims that the government failed to prove a prima facie case on the crime alleged in the indictment because 1) his failure to appear before the probation officer was not a violation of his appearance bond (apparently because the bond made no mention of such a condition), and 2) his failure to appear before the probation officer was not willful. Appellant also observes that at no time did appellant violate the travel restrictions set forth in his appearance bond.

█ We find it unnecessary to consider these specifications of error because we find that the indictment against Clark did not state a criminal offense.

reporting to a probation officer for completion of a presentence report is a "condition deemed reasonably necessary to assure appearance as required." Indeed, the record before us is singularly inadequate concerning the precise conditions upon which Clark *was* released. The record contains no order expressly setting forth the conditions of his release as required by § 3146(c). Even testimony from the proceedings at which Clark pleaded guilty to interstate transportation of a motor vehicle does not indicate the precise nature of the court's instructions to Clark. While the testimony can be read to show that the judge orally instructed Clark to report to the probation officer, it does not show that reporting was ever made an express condition of his bond. This ambiguity appears to have resulted from the informal release procedures adopted by the trial court. As to the undesirability of such practices, see United States v. Egan, 2 Cir. 1968, 394 F.2d 262:

"The present case arose in part because of the less than satisfactory procedures adopted with respect to the restrictions

added by order of the court to the standard form. These were simply typewritten on an unsigned slip of paper stapled to the bond, which did not incorporate them by reference. Restrictions or conditions not within the express conditions of the standard form and changes in the bail limits to places within or beyond the court's own district, should be recited in the body of the bond itself or, if on a separate paper, they should be referred to in the bond as an attached schedule or supplement, or the supplement should describe itself as an amendment to the bond, designated by case name, docket number, name of defendant bonded and date and should be executed and acknowledged by the same parties so that the attachment or supplement is an instrument of the same dignity and formality as the bond itself. Likewise, subsequent modifications of the terms of the bond (including a change in bond limits) ordered by the court should be set out 'in such an attachment or rider or in a newly written bond, executed and acknowledged in the same fashion as the original bond." 394 F.2d at 267.

Although this point was not brought to the attention of the district court, or argued in appellant's brief, the failure of the indictment, and of the evidence which followed it, to disclose a violation of 18 U.S.C.A. § 3150, constitutes plain error within the meaning of F.R.Crim.P. 52 (b) and warrants reversal by a reviewing court. See, Chappell v. United States, 9 Cir. 1959, 270 F.2d 274, 276.

18 U.S.C.A. § 3150 under which appellant was convicted provides in pertinent part as follows:

"Whoever, having been released pursuant to this chapter, wilfully fails to appear before any court or judicial officer as required, shall, * * * if he was released in connection with a charge of felony, or while awaiting sentence or pending appeal or certiorari after conviction of any offense, be fined not more than $5000 or imprisoned not more than five years, or both * * *."

It should be noted that the statute by its terms imposes penalties only for the willful failure to appear before any "court or judicial officer,"[3] and Clark was both indicted and convicted for fail-

ure to report to a probation officer. Throughout appellant's trial, the government attempted to show that a probation officer was a "judicial officer" within the meaning of the statute. The trial court adopted this theory as an accurate statement of the law in its charge to the jury:

"Now Section 3150 of Title 18, United States Code, provides this: Whoever having been released pursuant to this chapter wilfully fails to appear before any Court or judicial officer, and Mr. Raggio is a judicial officer, he is an officer of this Court, he is an agent and representative of this Court and he was on this occasion, as required shall subject to the provisions of the Federal Rules of Criminal Procedure incur a forfeiture of any security which was given or pledged for his release, and in addition if he was released in connection with a charge of a felony or while awaiting sentence and pending appeal or certiorari after conviction of an offense shall be punished and so forth and I don't need to read that because the jury is not concerned with what the punishment is.

3. The statute as it now reads is substantially different from its predecessor, § 3146, which imposed criminal penalties for the willful failure to surrender within 30 days after the forfeiture of bail. As Judge Wisdom has pointed out in Brown v. United States, 5 Cir. 1969, 410 F.2d 212, p. 216: "Section 3150 was enacted specifically to amend the [old] bail jumping penalty provision." This earlier statute imposed its penalties for failure to "surrender" after forfeiture of bail and not, as the present statute, for failure to "appear before any court or judicial officer." The thrust of the two statutes was therefore quite different. As the Justice Department itself has stated, Memo No. 484, September 8, 1966, in referring to Section 3150;
   "The Act does not provide penalties for a violation of a condition of release short of failing to appear before a judicial officer or court as required. * * * For example, a person may be required to live at a specified address; however if he lives elsewhere but appears as required before the judicial officer or court he is not subject to the penalties

herein provided." Cited in Brown v. United States, 410 F.2d at 212.
Compare the stated purposes of the new § 3150 to the enforcement provision which it superseded:
   18 U.S.C.A. § 3146. Jumping bail
   Whoever, having been admitted to bail for appearance before any United States commissioner or court of the United States, incurs a forfeiture of the bail and willfully fails to surrender himself within thirty days following the date of such forfeiture, shall, if the bail was given in connection with a charge of felony or pending appeal or certiorari after conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both; or, if the bail was given in connection with a charge of committing a misdemeanor, or for appearance as a witness, be fined not more than $1,000 or imprisoned not more than one year, or both.
   Nothing in this section shall interfere with or prevent the exercise by any court of the United States of its power to punish for contempt.

I don't know what the punishment is. That's the reason I get these presentence reports and that is what I was trying to do in this case. Anyway that is the law, members of the jury, and its up to you to decide as to whether or not on or about May 25, 1967, if this defendant did or did not appear before Mr. Raggio on that morning to let Mr. Raggio complete his pre-sentence report which he was trying to make for this Court and that is just all there is to it and there is no room for any sympathy of any kind, there is no extenuating circumstances of any kind, you are just confronted with the question in this case of deciding under your oaths and that's not a light thing, members of the jury, but deciding on your oaths as to whether or not this man did or did not do just what I have said. If he did do that its your sworn duty under your oaths regardless of any feeling or any kind of impulse that you may have to want to be gentle with this fellow or turn him a loose or give him something else that congress didn't give him or forgive him for what congress said he should be punished for it would be your duty under those circumstances to say that he is guilty. On the other hand, if you don't believe those things then it would be your sworn duty to say he is not guilty. That's all it is."

▮ Appellant did not object to the court's instructions to the jury on the ground that a probation officer was not a judicial officer within the meaning of the statute. But it is well-established that a court's instructions cannot "increase the effect of the statute." Wilkerson v. United States, 7 Cir. 1930, 41 F.2d 654, 656, cert. denied, 282 U.S. 894, 51 S.Ct. 179, 75 L.Ed. 788. If in fact a probation officer is not a judicial officer within the meaning of 18 U.S. C.A. § 3150, then the indictment against Clark was defective, Chappell v. United States, *supra,* and the effect of the court's erroneous instruction would be

to authorize the jury to convict appellant for an act that was not a crime.

The government argues in its brief that a probation officer is a court assistant or judicial officer because he is appointed by the court, 18 U.S.C.A. § 3654, and because he must perform such duties as the court may direct. 18 U.S. C.A. § 3655. Nowhere in its brief, however, does the government make mention of 18 U.S.C.A. § 3152 which expressly defines the term "judicial officer" as that term was intended to be used in the Bail Reform Act. The statutory definition is as follows:

"As used in sections 3146–3150 of this chapter—

(1) The term 'judicial officer' means, unless otherwise indicated, any person or court authorized pursuant to section 3041 of this title, or the Federal Rules of Criminal Procedure, to bail or otherwise release a person before trial or sentencing or pending appeal in a court of the United States, and any judge of the District of Columbia Court of General Sessions * * *."

Reference to § 3041 of title 18 and to the Rules of Criminal Procedure reveals no mention of a probation officer in connection with the authority "to bail or otherwise release a person before trial or sentencing or pending appeal * *." The sections of the United States Code relied on by the government cannot remedy this deficiency. They may indicate that a probation officer is an arm of the court and under its supervision, but they do not make him a judicial officer as that term is expressly defined by the Bail Reform Act.

An additional reason for holding that a probation officer is not a judicial officer as that term is used in the Bail Reform Act is the havoc which a contrary ruling would create in other provisions of the Act. Not only would acceptance of the government's position permit probation officers to release an accused on bail pursuant to § 3146(a), but if a probation officer is a judicial officer then he would also be required to issue or-

ders containing the conditions of release, 18 U.S.C.A. § 3146(c), to entertain motions to modify the conditions of release, 18 U.S.C.A. § 3146(d), to amend his orders at any time to impose additional conditions, 18 U.S.C.A. § 3146(e), and to detain or release material witnesses in a criminal proceeding, 18 U.S.C.A. § 3149. Such an expansive concept of a probation officer's duties not only seems novel in the extreme, it runs contrary to the avowed Congressional purpose expressed in the history of the Bail Reform Act not to subject probation officers to "additional duties [that] might require additional personnel." See 1966 U.S. Code Cong. and Adm.News, p. 2293.

■■ In reaching this conclusion we do not of course disparage the importance of the probation officer in the scheme of criminal justice. He is a valued, helpful and important arm of the court and his services are essential to our contemporary criminal procedure. But an arm of the court is not the body of the court and we find no statutory vestments which endow a probation officer with judicial functions. Where, in addition, we are confronted with a statute which contains its own restrictive definition of a "judicial officer," and must interpret that term within the framework of the statute, we are not at liberty to disregard the statutory definition. We here interpret a criminal statute. A criminal statute must be strictly construed and "cannot be enlarged by analogy or expanded beyond the plain meaning of the words used." Chappell v. United States, *supra*, 270 F.2d at 278.

■ The inapplicability of § 3150 to appellant's conduct does not, of course, mean that the court was powerless to punish for disobedience of its order. Where a condition of an appearance bond is violated *other than non-appearance before a court or judicial officer*, the court still has at its disposal the power to de-

clare a forfeiture of the bond, Brown v. United States, 5 Cir. 1969, 410 F.2d 212 to revoke bail, United States ex rel. Brown v. Fogel, 4 Cir. 1968, 395 F.2d 291, 294, to issue a warrant of arrest, 18 U.S.C.A. § 3146(c), and in extreme cases, to declare the violator in contempt of court. United States v. Penn, 2 Crim. L.Rep. 3159 (D.C.Ct. of Gen.Sess.1968). The last is a sanction which "must be used sparingly, and only against deliberate or wilful contemptuous conduct toward the Court." United States v. Penn, *supra*, at 3141. But it is not unavailable. 18 U.S.C.A. § 1351 of the Bail Reform Act expressly reserves to the court its traditional powers to punish for contempt. As stated in that section: "Nothing in this chapter shall interfere with or prevent the exercise by any court of the United States of its power to punish for contempt." The presence of this section in the Bail Reform Act makes it unnecessary to attribute to § 3150 a broader enforcement power than its plain language permits. When an accused willfully violates a condition of release, he necessarily violates the court order containing these conditions. See 18 U.S.C.A. § 3146(c). If the circumstances of the violation are extreme enough, see United States v. Green, 1958, 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672, the violator's conduct is punishable under 18 U.S.C.A. § 401(3).[4]

This relationship between the contempt power and the enforcement provisions of § 3150 was noted in United States ex rel. Brown v. Fogel, *supra*. The court there pointed out that § 3150 does not punish the violation of all conditions of release, but only those conditions which involve a failure to appear:

" * * * It is true that the Act provides *specific* penalties only for a wilful failure to appear, 18 U.S.C.A. § 3150; and these are forfeiture of se-

---

4. 18 U.S.C.A. § 401 (1966):
   A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

   * * * * *

   (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

curity and criminal penalties. But, 18 U.S.C.A. § 3151 expressly preserves, unaffected by the Act, the power of any court of the United States to punish for contempt. Violation of a condition of release constitutes contempt, and for contempt the Eighth and Fourteenth Amendments are the only limitation of the punishment which may be imposed, short of the Court's sound discretion. Surely, the Act's silence of a specific remedy to assure appearance after demonstrated breach of a condition of admission to bail under the Act indicates the extent of the Court's power under § 3151. The 'spirit' of the Act is thus not to limit or to prescribe exclusive remedies for breach of a condition of release, other than appearance in appropriate cases. For breach of condition other than appearance, the Court when proceeding under the Act or under the inherent power may do all that is appropriate to the orderly progress of the trial and the fair administration of justice. Cf. Fernandez v. United States, 81 S.Ct. 642, 5 L.Ed.2d 683 (1961) (per Harlan, J., as Circuit Justice)." 395 F.2d at 293.

■ Clark's failure to appear before a probation officer as ordered may have constituted a breach of a condition of his release, but certainly did not constitute a failure to appear before a court or judicial officer. His action may have warranted revocation of bail, arrest, and the institution of contempt proceedings for disobedience of a lawful court order, see Yates v. United States, 10 Cir. 1963, 316 F.2d 718, but his presence had not been required at any judicial proceedings, and his failure to keep an appointment with a probation officer did not therefore constitute the kind of non-appearance which § 3150 of the Bail Reform Act was designed to discourage.

■ We have considered the possibility that the indictment against appellant may have been specific enough to constitute a charge of criminal contempt. It indicated that he had been required to appear before a United States proba-

tion officer and it charged that he had knowingly and willfully failed to appear as required. While the indictment alleged a violation of 18 U.S.C.A. § 3150, and not 18 U.S.C.A. 401(3), this fact alone would not render the indictment insufficient in regard to the latter offense. See, Paz Morales v. United States, 1 Cir. 1960, 278 F.2d 598, 599–600.

"The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." Hewitt v. United States, 8 Cir. 1940, 110 F.2d 1, 5, cert. denied, 310 U.S. 641, 60 S.Ct. 1089, 84 L.Ed. 1409; Anderson v. United States, 8 Cir. 1959, 262 F.2d 764, 769, cert. denied, 360 U.S. 929, 79 S.Ct. 1446, 3 L.Ed.2d 1543.

■ Despite this liberal construction of indictments, we are persuaded that the indictment against Clark failed to state a criminal offense even if considered as an indictment for criminal contempt. See, Chappell v. United States, *supra.* " * * * knowledge or notice of the order in question on the part of appellant and a willful disobedience of that order are essential elements of criminal contempt." Yates v. United States, 10 Cir. 1963, 316 F.2d 718, 723. The indictment against Clark failed to mention any court order and failed to allege that he had knowledge or notice of that order. While it did state that he knowingly and willfully failed to appear before a United States probation officer as "required," this would not, especially in light of what transpired at his trial, put him on sufficient notice that he was being tried for criminal contempt and not for bail jumping.

Had appellant known that he was being tried for contempt, the entire posture

of his defense might have shifted. Instead of taking the position that he lacked the requisite willfulness in not appearing before the probation officer, he might have argued that he had substantially complied with the court's order in reporting to the probation officer immediately following his hearing (even if he did not report back the next day), or that the probation officer did not have power to amend the court's order by granting him permission to visit his grandparents, and ordering his return the next day. Indeed, a contempt conviction on the evidence before us would require us to find that a probation officer has the power to amend a court order, and that such order, *as amended,* would support a contempt proceeding. This we may not do. Under the circumstances of this case we are therefore unprepared to say that a citation of 18 U.S.C.A. § 3150 in a prosecution that was in reality for criminal contempt would "not mislead a defendant to his prejudice." F.R.Crim.P. 7(c).

Since the evidence did not show an offense under § 3150, and since appellant could not have known that he was being tried for criminal contempt and not bail jumping, the conviction below must be reversed.

Reversed.